UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DORAN DUNCAN,

                    Petitioner,                    Case No. 1:23-cv-355

v.                                                 Honorable Paul L. Maloney

MICHAEL BURGESS,

                    Respondent.
_____/

## ORDER

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. This matter is before the Court on Petitioner's motion to stay these proceedings. (ECF No. 8.) As set forth fully below, the motion is **GRANTED**.

Petitioner Doran Duncan is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility in Manistee, Manistee County, Michigan. On August 2, 2019, following a four-day jury trial in the Shiawassee County Circuit Court, Petitioner was convicted of reckless driving causing death, in violation of Mich. Comp. Laws § 257.6264, operating while intoxicated causing death (OWI), in violation of Mich. Comp. Laws § 257.6254, being a felon in possession of a weapon (felon-in-possession), in violation of Mich. Comp. Laws § 750.224f, carrying a concealed weapon (CCW), in violation of Mich. Comp. Laws § 750.227, use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b, and first-degree felony-murder, in violation of Mich. Comp. Laws § 750.316. "The trial court sentenced defendant as an habitual offender, second offense, MCL 769.10, to concurrent prison terms of life without parole for the felony-murder conviction, 28 to 90 months for the CCW

and felon-in-possession convictions, and 125 to 270 months for the OWI and reckless driving convictions, to be served consecutive to a two-year prison term for the felony-firearm conviction." *People v. Duncan*, No. 350983, 2021 WL 2389976, at *1 (Mich. Ct. App. June 10, 2021).

The Michigan Court of Appeals set forth the facts underlying Petitioner's convictions as follows:

> Defendant's convictions arise from a serious automobile accident that resulted in the death of George Ramos. On the afternoon of May 18, 2018, defendant was a passenger in a white 2005 Cadillac Deville driven by Kayla Hitz. The vehicle stopped on the side of Sheridan Road, one mile from the intersection with M-13 in Saginaw County. A witness saw Hitz and defendant scuffling in the car and heard Hitz yell at defendant to get off of her. Hitz got out of the car and began walking down the road. Defendant also got out of the car and the two continued to argue. As defendant began to follow Hitz, she turned around and said, "Im going to shoot your ass." Hitz took a gun from her purse and shot toward defendant four to six times as he stood near the passenger side of the car. Hitz got into the car, started the car, and began to drive off, leaving defendant behind. Defendant opened the car door while the car was moving and jumped in. The witness's son called 911 to report the incident.

> Just before 3:00 p.m., a "be-on-the-lookout" dispatch was radioed to all officers in the area for a white Cadillac with two occupants heading southbound on M-13 toward Shiawassee County. The dispatch indicated that a female occupant had fired shots at a male occupant using a handgun. Shiawassee County Sergeant Brian Smith initiated a traffic stop on the Cadillac at 3:01:26 p.m. Sergeant Smith stopped his vehicle 20 to 25 feet behind the Cadillac, and used felony stop procedures. He pulled out his gun and pointed it at the Cadillac as he stood in the crook between the door and the passenger compartment of his cruiser and shouted instructions to the occupants to turn off the vehicle and keep their hands where he could see them. Village of Lennon Chief of Police Rich Folaron approached from the north and stopped his vehicle in front of the Cadillac. At 3:02 p.m., Sergeant Smith radioed to Chief Folaron to move his vehicle behind Smith's vehicle. Chief Folaron immediately responded that he saw "a lot of action inside that car." Defendant and Hitz exchanged seats, and Hitz got out of the vehicle through the passenger's door and fell onto the ground. At 3:02:21 p.m., defendant sped off "full throttle," heading southbound on M-13.

> Witnesses testified that the white Cadillac drove through the village of Lennon at an estimated speed of 80 to 85 miles per hour in a 35-mile-per-hour zone. Witnesses also reported that the Cadillac was entering the northbound traffic lane while passing vehicles, forcing northbound drivers to leave the roadway to avoid colliding

with the Cadillac. One northbound driver who had to swerve off the road testified that as the Cadillac sped between his vehicle and the vehicle that the Cadillac was passing, the driver of the Cadillac "hit the accelerator" and the "engine went full throttle." Another southbound driver said that the Cadillac passed him in the northbound lane going at least 100 miles per hour and that northbound vehicles were being forced off the road. The Cadillac was traveling south on M-13 toward the intersection with I-69.

About the same time, George Ramos had just exited westbound I-69 and his car, a Cobalt, was stopped at the end of the off-ramp ramp waiting to turn left to head northbound on M-13. As the Cobalt made a left turn, the Cadillac struck the Cobalt nearly head-on, killing Ramos. Chief Folaron did not regain sight of the Cadillac until he got to the intersection of M-13 and I-69 and saw that it had crashed. The crash was reported at 3:04:59 p.m. According to a Michigan State Police accident reconstructionist, the event data recorder obtained from the Cadillac showed that the Cadillac was moving at 107 miles per hour from two to five seconds before impact, and was moving at 104 miles per hour one second before impact. The event data recorder obtained from the Cobalt showed that the Cobalt was stationary four seconds before impact, was moving at four miles per hour three seconds before impact, was moving at 10 miles per hour two seconds before impact, and was moving at 12 miles per hour one second before impact. There was no evidence at the scene of preimpact braking by the Cadillac. The Cadillac was 470 feet to the north when the Cobalt began to enter the traveled lanes three seconds before impact. If the Cadillac had been traveling at the posted speed limit of 55 miles per hour, the Cobalt would have had six seconds to complete its turn. The accident reconstructionist testified that the Cadillac caused the accident. Forensic testing of defendant's blood after the accident showed that defendant had six nanograms of active tetrahydrocannabinol (THC) and 52 nanograms of inactive THC in his system.

Police discovered two firearms in the Cadillac, a nine-millimeter handgun legally registered to Hitz and a loaded .40-caliber handgun with the serial number obliterated. Defendant was wearing an empty foam gun holster at the time of the accident. According to the forensic science testimony, it was 470 billion times more likely that defendant was a contributor to the DNA on the .40-caliber gun than an unrelated unknown individual.

*Id*., at *1–2.

Petitioner appealed his convictions raising several issues by way of a brief filed with the

assistance of counsel and a *pro per* supplemental brief. *See id*., at *5 (stating "in defendant's brief

filed by counsel and in his Standard 4 brief, defendant argues that the prosecutor erred . . ."); Case

3

Information, *People v. Duncan*, No. 350893 (Mich. Ct. App.), https://www.courts.michigan.gov/ c/courts/coa/case/350983 (last visited August 22, 2023); (Pet., ECF No. 1, PageID.2–3). The Michigan Court of Appeals affirmed the trial court by opinion issued June 10, 2021. Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court. That court denied leave by order entered April 5, 2022. *People v. Duncan*, 971 N.W.2d 620 (Mich. 2022).

Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.3.) Instead, on April 3, 2023, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

I.      Petitioner['s] conviction[] for first degree felony murder was not supported by sufficient evidence.

II.     Petitioner was denied due process by the prosecution[']s repeated misconduct of error.

III.    Petitioner's [sic] was denied effective assistance of counsel.[1]

(Pet., ECF No.1, PageID.5–8.)

On August 10, 2023, Petitioner filed a motion asking the Court to stay these proceedings and to hold them in abeyance so that he might return to the state courts and exhaust his available remedies with respect to new issues "involving ineffective assistance of counsel," both trial and appellate. (Br., ECF No. 2, PageID.74, 75.) Petitioner reports that trial counsel was ineffective because he failed to investigate and present favorable witnesses for the defense and he failed to present and argue available exculpatory evidence on Petitioner's behalf. (*Id.*, PageID.75.) He reports that appellate counsel omitted clear and significant issues pertaining to trial counsel's pre-

---

[1] Petitioner details how counsel rendered ineffective assistance in his supporting brief. (ECF No. 2, PageID.42–55.)

4

trial investigation as well as trial counsel's failure to prepare a substantial defense. (*Id*.) Petitioner acknowledges that he has not raised these claims in the Michigan courts.

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *O'Sullivan*, 526 U.S. at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138–39.

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner alleges that he has exhausted the three habeas issues that he expressly raises in his petition. But Petitioner now claims he has "discovered" new claims relating to ineffective assistance. (Mot., ECF No. 8, PageID.75, ¶ 5.) Petitioner has not provided any detail regarding these claims beyond the two sentences that appear in his motion. (*Id*.)

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise the issues he has discovered. He may file a motion

for relief from judgment under Mich. Ct. R. 6.500 *et seq.* Under Michigan law, one such motion may be filed after August 1, 1995. Mich. Ct. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion. Therefore, the Court concludes that he has at least one available state remedy.

To properly exhaust his claim, Petitioner must file a motion for relief from judgment in the Shiawassee County Circuit Court. If his motion is denied by the circuit court, Petitioner must appeal that decision to the Michigan Court of Appeals and the Michigan Supreme Court. *O'Sullivan*, 526 U.S. at 845; *Hafley*, 902 F.2d at 483 ("'[P]etitioner cannot be deemed to have exhausted his state court remedies as required by 28 U.S.C. § 2254(b) and (c) as to any issue, unless he has presented that issue both to the Michigan Court of Appeals and to the Michigan Supreme Court.'" (citation omitted)).

Because Petitioner has some claims that are exhausted and proposes to add some that are not, his proposed new petition would be "mixed." Under *Rose v. Lundy*, 455 U.S. 509, 522 (1982), district courts are directed to dismiss mixed petitions without prejudice in order to allow petitioners to return to state court to exhaust remedies. However, since the habeas statute was amended to impose a one-year statute of limitations on habeas claims, *see* 28 U.S.C. § 2244(d)(1), dismissal without prejudice often effectively precludes future federal habeas review. This is particularly true after the Supreme Court ruled in *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001), that the limitations period is not tolled during the pendency of a federal habeas petition. As a result, the Sixth Circuit adopted a stay-and-abeyance procedure to be applied to mixed petitions. *See Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002). In *Palmer*, the Sixth Circuit held that when the dismissal of a mixed petition could jeopardize the timeliness of a subsequent petition, the district court should dismiss only the unexhausted claims and stay further proceedings on the remaining portion until the petitioner has exhausted his claims in the state court. *Id.*; *see also Rhines v. Weber*,

544 U.S. 269, 277 (2007) (approving stay-and-abeyance procedure); *Griffin v. Rogers*, 308 F.3d 647, 652 n.1 (6th Cir. 2002).

Petitioner's application is subject to the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1). Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner appealed his conviction to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court denied his application on April 5, 2022. Petitioner did not petition for certiorari to the United States Supreme Court, though the ninety-day period in which he could have sought review in the United States Supreme Court is counted under § 2244(d)(1)(A). *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The ninety-day period expired on July 4, 2022, a federal holiday, so his petition would have been due no later than July 5, 2022. Accordingly, absent tolling, Petitioner would have one year, until July 5, 2023, in which to file his habeas petition. Petitioner filed the instant petition on April 3, 2023, approximately three months before expiration of the limitations period.

The running of the statute of limitations is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until a decision is issued by the state supreme court. *Lawrence v. Florida*, 549 U.S. 327 (2007). The statute is not tolled during the time that a Petitioner petitions for writ of certiorari in the United States Supreme Court. *Id.* at 332.

In the months since the petition was filed, therefore, it appears Petitioner's period of limitation may have expired with regard to his new issues. It may be that it is simply too late for Petitioner to raise his "discovered" issues in this Court. But it is also possible that the doctrine of

equitable tolling might afford some relief or that the running of the statute might be triggered by an event that occurred later than the date Petitioner's judgment became final, for example, under 28 U.S.C. § 2244(d)(1)(D), on the date that the factual predicate of the claim could have been discovered through the exercise of due diligence. Resolution of those issues must await a complete record. For now, granting Petitioner's request for a stay offers the best opportunity for protecting his rights—even if, in the end, his new claims are barred as untimely.

Petitioner's first step, filing a motion for relief from judgment in the trial court, provides a means of preserving the timeliness of his new claims if, in fact, time remains. So long as Petitioner's request for collateral review is pending, the time will not count against him. But, until he files his motion and after the Michigan Supreme Court rules on his application for leave to appeal to that court, the statute of limitations will run. The *Palmer* Court has indicated that thirty days is a reasonable amount of time for a petitioner to file a motion for post-conviction relief in state court, and another thirty days is a reasonable amount of time for a petitioner to return to federal court after he has exhausted his state-court remedies. *Palmer*, 276 F.3d at 781;*see also Griffin*, 308 F.3d at 653 (holding that sixty days amounts to a mandatory period of equitable tolling under *Palmer*).

Because it appears likely that Petitioner has less than sixty days remaining before the statute of limitations expires, Petitioner would not have the necessary 30 days to file a motion for post-conviction relief or the additional 30 days to return to this court before expiration of the statute of limitations. As a result, were the Court to dismiss the petition without prejudice for lack of exhaustion, the dismissal could jeopardize the timeliness of any subsequent petition. *Palmer*, 276 F.3d at 781.

The Supreme Court has held, however, that the type of stay-and-abeyance procedure set forth in *Palmer* should be available only in limited circumstances because over-expansive use of the procedure would thwart the AEDPA's goals of achieving finality and encouraging petitioners to first exhaust all of their claims in the state courts. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). In its discretion, a district court contemplating stay and abeyance should stay the mixed petition pending prompt exhaustion of state remedies if there is "good cause" for the petitioner's failure to exhaust, if the petitioner's unexhausted claims are not "plainly meritless" and if there is no indication that the petitioner engaged in "intentionally dilatory litigation tactics." *Id.* at 278. The Court concludes that the *Rhines* requirements are met here. Accordingly, pursuant to the Sixth Circuit's direction in *Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002):

**IT IS ORDERED** that Petitioner's unexhausted claims are dismissed without prejudice.

**IT IS FURTHER ORDERED** that Petitioner shall have thirty (30) days from the date of this order in which to file a motion for relief from judgment in the Shiawassee County Circuit Court setting forth any unexhausted claims that he intends to pursue in his habeas petition.

**IT IS FURTHER ORDERED** that Petitioner's action is hereby stayed until Petitioner files a motion to amend his petition to include any subsequently exhausted claims. Such motion must be filed not later than 30 days after a final decision by the Michigan Supreme Court on Petitioner's unexhausted claims and shall include a description of the newly exhausted claims and the dates and substance of decision at each step of state-court review. Petitioner shall attach a proposed amended petition to his motion. If the motion to amend is granted, the proposed amended petition will supersede the existing petition, so it must include all claims Petitioner intends to raise, including exhausted claims raised in the initial petition.

**IT IS FURTHER ORDERED** that if Petitioner fails to comply with the deadlines imposed in this order, the Court may dismiss the petition.

**IT IS FURTHER ORDERED** that Petitioner shall advise the Court of any change of address occurring during the pendency of the stay.

**IT IS FURTHER ORDERED** that this case shall be administratively closed until such time as Petitioner files a motion to amend his petition in accordance with the procedures set forth in this order.

Dated:   August 25, 2023                          /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge

10